NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____
                                          x
ROBERT LENOX,                             x
                                          x    Hon. Stanley R. Chesler, U.S.D.J.
                    Plaintiff,            x
                                          x    Civ. No. 04-2282 (SRC)
v.                                        x
                                          x     **OPINION**
                                          x
SCOTTSDALE INSURANCE CO.,                 x
                                          x
                    Defendant,            x
_____   x

**CHESLER, District Judge**

      **THIS MATTER** comes before the Court on cross-motions by Plaintiff and Defendant for

Summary Judgment (docket items 10 and 11). The Court having considered the papers

submitted by the parties, and for good cause shown, grants Defendant's Motion and denies

Plaintiff's Motion for the reasons set forth below.

## I. PROCEDURAL BACKGROUND

      On or about March 8, 2004, Plaintiff Robert Lenox filed a declaratory judgment action in

the Superior Court of New Jersey, Law Division, Ocean County, New Jersey. Defendant

Scottsdale Insurance Company filed a Notice of Removal in the United States District Court for

the District of New Jersey on or about May 12, 2004, on diversity jurisdiction grounds. On or

about March 23, 2005, both Plaintiff and Defendant filed Motions for Summary Judgment, which

the Court now considers.

## II. UNDISPUTED FACTS

Plaintiff Lenox owns a home in Brick, New Jersey.  Purchasers of homes in lots at Nejecho Beach are eligible to become members of the Nejecho Beach Club ("Club"), (Nejecho Beach Club Cert. of Incorp., at 4), and at the time Plaintiff purchased his home in 2000, he joined the Club.  (Pl.'s Dep. at 12, lines 16-20.)  At the time, club membership dues included an initiation fee of $125.00 and annual dues of approximately $75. (Id. at 13, lines 10-18.)  Annual dues are currently approximately $125.00 per member, and the club membership includes 52 households.  (Sullivan Dep. at 16, lines 8-18.)  Member dues are used to pay Club operating expenses, including taxes, office supplies, and the insurance policy described below.  (Id. at 15, lines 10-24.)

Nejecho Beach Club holds a "Commercial General Liability Coverage" insurance policy ("Policy") issued by Scottsdale Insurance Company.  (Id. at 15, lines 21-24; Def.'s Ex. D & E.) The Club is the only named insured and additional coverage is provided to officers and directors of the Club while acting in their official duties. (Ins. Policy, located at Def.'s Ex. E.)  The Policy includes an additional insured endorsement entitled "Additional Insured - Club Members." (Policy, Pl.'s Ex. J, at 7.)  The provision "modifies insurance" provided under the general liability coverage of the Policy.  (Id.).  It reads as follows: "WHO IS AN INSURED (Section II) is amended to include as an insured any of your members, but only with respect to their liability for your activities or activities they perform on your behalf." (Id.)  The terms of this provision are not defined.

On June 30, 2001, Plaintiff went to the Club with his girlfriend and other friends, including Andrew Veloce, to "enjoy the beach, to drink some beer and have a good time and play some horse shoes and swim." (Pl.'s Dep. at 62, lines 6-16.)  While at the Club, Plaintiff jumped

in the water off of a bulkhead. (Id., at 81, lines 21-25.)  When Plaintiff jumped, he made contact

with Mr. Veloce's body, which resulted in Mr. Veloce falling into the water.  (Id., at 88, lines 10-

19; 91, lines 11-21.)  Mr. Veloce landed headfirst in the water, and suffered a fracture of his C3

vertebrae. (Veloce Dep. at 36, lines 12-14;43, lines 6-8.)

Subsequently, on or about June 30, 2003, Mr. Veloce initiated a personal injury lawsuit

against Plaintiff Lenox and the Nejecho Beach Club in the Superior Court of New Jersey, Law

Division, Ocean County.  Following questions as to indemnification for any resulting liability in

the underlying personal injury lawsuit, the instant action was filed by Plaintiff Lenox against the

Club's insurance carrier, Scottsdale, in Superior Court of New Jersey.  The action was then

removed by Defendant to this Court.  Both parties have filed Motions for Summary Judgment,

which the Court now considers.


## III. LEGAL STANDARD

A party seeking summary judgment must "show that there is no genuine issue as to any

material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ.

P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Orson, Inc. v. Miramax

Film Corp., 79 F.3d 1358, 1366 (3d Cir. 1996).  In deciding whether there is a disputed issue of

material fact, the Court must view the underlying facts and draw all reasonable inferences in

favor of the non-moving party.   Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475

U.S. 574, 587 (1986); Pennsylvania Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995).  The

threshold inquiry is whether there are "any genuine factual issues that properly can be resolved

only by a finder of fact because they may reasonably be resolved in favor of either party."

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).

Once the moving party has properly supported its showing of no triable issue of fact and of an entitlement to judgment as a matter of law, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts."  Matsushita, 475 U.S. at 586; see also Anderson, 477 U.S. at 247-48.  The non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  Celotex, 477 U.S. at 324; Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992) ("to raise a genuine issue of material fact . . . the [non-moving party] need not match, item for item, each piece of evidence proffered by the movant," but rather "must exceed the 'mere scintilla' threshold"), cert. denied, 507 U.S. 912 (1993).


**IV. DISCUSSION**

At issue in this case is to what extent Nejecho Beach Club members are covered under the Policy held by the Club, and more specifically, whether the Policy covers any liability attributed to Plaintiff Lenox for the injuries sustained by Andrew Veloce on June 30, 2001.  The primary argument between the parties focuses on the Additional Insured Endorsement of the Club's Policy and its terms.  Plaintiff argues that the terms of this provision include his activities at the Club on June 30, 2001, and as such cover any liability for Mr. Veloce's injuries.  Defendant, however, asserts the provision is more limited and does not encompass the breadth of activities suggested by Plaintiff.  For the reasons discussed below, the Court finds the terms of the endorsement unambiguous and declines to read the provision to include Plaintiff's activities and actions on the day in question.

**A. Ambiguity of the Endorsement**

This Court is asked to interpret the terms of the additional insured endorsement, which sets forth coverage under the Scottsdale Policy, and is the center of the dispute between the parties. The "Additional Insured - Club Members" provision reads as follows:

> WHO IS AN INSURED (Section II) is amended to include as an insured any of your members, but only with respect to their liability for your activities or activities they perform on your behalf.

The Policy itself provides no definitions relevant to this provision and thus the Court is essentially asked to determine what the word "activities" means in the context of this Policy and whether coverage is extended to Plaintiff Lenox.

Plaintiff acknowledges that the additional insurance coverage provided to Club members is limited to Club "activities" or activities performed "on behalf of" the Club. However, Plaintiff argues that without definition, these phrases are unclear and ambiguous such that the limitations of coverage under the Policy for members is uncertain and requires interpretation. Further, Plaintiff notes that when an insurance policy is ambiguous, the ambiguity is resolved against the insurer. Morag v. Continental Ins. Co., 375 N.J. Super. 56, 61 (App. Div. 2005); see also Fed. Home Loan Mortg. Corp. v. Scottsdale Ins. Co., 316 F.3d 431, 444 (3d Cir. 2003) ("New Jersey Courts apply principles of liberal construction in examining insurance policy language ... tak[ing] a broad and liberal view so that the policy is construed in favor of the insured.") Therefore, Plaintiff urges this Court to read the provision as ambiguous and then suggests various avenues for interpretation, including the Club Constitution and By-Laws, and his own expectations as a due-paying member. Using these means for interpretation, Plaintiff argues that the provision reads in favor of coverage for liability stemming from Mr. Veloce's accident.

5

Defendant argues that the plain language of this provision is clear and unambiguous, demonstrating that the Club and its insurer did not intend to extend unlimited coverage to members.  As such, Defendant asks the Court to apply the plain and ordinary meaning of the words.  Defendant insists that the endorsement grants only limited coverage under narrow circumstances of activities of the Club or on the Club's behalf, and as such, this Court only need determine whether Plaintiff's activities on June 30, 2001, fall within these limitations.

In New Jersey, "ambiguity exists in an insurance contract where the phrasing of the policy is so confusing that the average policyholder cannot make out the boundaries of coverage." Resolution Trust Corp. v. Fidelity & Deposit Co., 205 F.3d 615, 643 (3d Cir. 2001). (citation and internal quotation marks omitted); see also Weedo v. Stone-E-Brick, Inc., 81 N.J. 233, 247 (1979).  In the present case, this Court sees nothing so confusing about the terms used in the additional insured endorsement.  The actual words in question – "your activities" and "activities they perform on your behalf" – are simple and easy to understand in their own right and easily understood within the context of the Policy.   The Court declines Plaintiff's invitation to "torture the language" of this Policy such to "create ambiguity where none exists."  Resolution Trust Corp., 205 F.3d at 643.

**B. Activities under the Endorsement**

Finding no ambiguity, the Court turns to the endorsement to determine its meaning and scope using the plain and ordinary language of the provision.  The limiting terms of the provision, "only with respect to," make clear that the Policy is not intended to cover every member pursuit at the Club.  Exclusions in insurance contracts are to be "narrowly construed," but if that exclusion is "specific, plain, clear, prominent, and not contrary to public policy," it

should be enforced as written.  <u>Nav-Its, Inc. v. Selective Ins. Co.</u>, 869 A.2d 929 (N.J. 2005)

(pinpoint not yet available).  The provision does not say "all" activities, "member" activities, or

activities "on Club property."  Indeed substituting the word "Club" for "your" and the word

"members" for "they," the provision reads: "any of the Club's members, but only with respect to

members' liability for Club activities or activities members perform on the Club's behalf."

Plaintiff essentially asks the Court to interpret this provision in such a way that the limiting

language is irrelevant.  Plaintiff argues that his presence at the Club, "fostering a sense of

community with other members, in furtherance of the ... Club's purpose" is sufficient to be a

Club activity.  Plaintiff asserts that if the insurer wanted to make the scope of coverage clear, it

could have defined the activities.  Neither of these arguments is compelling.  Indeed, the Court

does consider the limiting language in this provision sufficient to define the scope of coverage,

and also finds that the words within the provision articulate specific situations where coverage

would be invoked.  Moreover, Plaintiff's argument that "fostering a sense of community" and

"good-will" are activities intended to be covered under this provision is simply absurd.

  Two possibilities for member coverage exist under this provision.  First, the Court reads

"on behalf of" the Club to include a member activity done for the benefit of the Club at its

request, such as a membership drive.  Despite Plaintiff's poor attempt to suggest that his

fellowship and goodwill with friends was in furtherance of the Club's mission, the Court sees

nothing in the facts before it that would suggest that Plaintiff's outing on the day in question to

fall within the simple and plain meaning of "on behalf of."  The second possibility of coverage

arises under a type of vicarious liability.  To explain, realize that the Club is a corporate entity

and as such, it can enter into contracts, it can be sued, it can be held liable for torts and breach of

contract, and so forth.  Considering this status, the words "your activities," must refer to activities undertaken by the corporate entity, such as when the Club enters into a service contract with a vendor.  Therefore, when the endorsement provision indicates that it will cover member liability, it follows that the intended coverage would be invoked when a member is held vicariously liable for some activity undertaken by the Club as a corporate entity.

Defendant appears to concede a third alternative, specifically that "Club activities" in this provision would at most include events organized and run by the Club itself, such as the Club annual picnic.  The Court sees no reason to analyze this assertion as even if it were true, the simple fact is that Plaintiff was not attending any Club sponsored event when the accident occurred.   In short, this Court finds the type of activities covered under the additional insured endorsement are those pursuits performed on behalf of the Club or situations where a member is held vicariously liable for an action by the Club.

### C. Plaintiff's Activities

Having found the additional insured endorsement to be unambiguous and to encompass only two specific situations, the Court now turns to whether Plaintiff Lenox's activities at the Club on June 30, 2001, are covered by the Policy.  The Court will mention Plaintiff's arguments regarding interpretation briefly, but dismisses them in turn as they are only applicable in the case of ambiguity.

First, Plaintiff asks the Court to consider his own expectations with regard to the insurance coverage.  However, only in cases of genuine ambiguity will the court apply a test of objectively reasonable expectations.  Zacarias v. Allstate Ins. Co., 168 N.J. 590, 598 (N.J. 2001); see also DiOrio v. New Jersey Mfrs. Ins. Co., 79 N.J. 257, 269 (1979) (finding the reasonable

expectations tests inappropriate where contract was unambiguous).  The instant case does not involve an ambiguous contract.  Second, Plaintiff points to the Club Constitution and By-Laws to direct the Court's interpretation.  Again, in New Jersey, words of an insurance policy are given "their plain, ordinary meaning" absent ambiguity, Zacarias, 168 N.J. at 595, and "the interpretation of [the] insurance policy must focus upon the terms of the agreement itself rather than extrinsic evidence." Jacobs Constructors, Inc. v. NPS Energy Servs., 264 F.3d 365, 377 (3d Cir. 2001).  The insurance contract itself makes no reference to the Club Constitution or By-Laws, therefore, the Court sees no reason to refer to these documents in its interpretation.

Therefore, turning to the two specific situations the Court described above under which a member would enjoy coverage, this Court finds neither applicable to Plaintiff.  On June 30, 2001, Plaintiff Lenox went to the Club to enjoy a private and personal outing with friends.  He was not attending a Club function nor was he engaged in activity directed by the Club in anyway.  Indeed, Plaintiff was simply taking advantage of his privilege to access Club property for his own pleasure.  Unfortunately, the afternoon resulted in a tragic accident, but the Court has no evidence before it that indicates that Plaintiff's liability stems from a theory of vicarious liability.

The Court sees no reason to grant coverage to Plaintiff under the Club's Policy simply because an accident between two individuals visiting the Club on their own accord for their own enjoyment occurred on Club property.  Reading the language of the endorsement in this way would lead to blanket coverage for any member stepping foot on club property for any reason.  This interpretation would provide insurance coverage where none was ever intended by the contracting parties, and would certainly be in conflict with the plain and ordinary meaning of the endorsement provision.  The Court fails to see how any reasonable and plain reading of the terms

utilized in this provision would cover Plaintiff's own private actions.  This Court finds that the language of the additional insured endorsement is limited such that the activities undertaken by Plaintiff on June 30, 2001, do not qualify for coverage under the Scottsdale Insurance Policy.


**V. CONCLUSION**

    For the reasons set forth above, Plaintiff's Motion for Summary Judgment is denied, and Defendant's Motion for Summary Judgment is granted.  This case is closed.  An appropriate form of order will be filed herewith.


Dated: May 5, 2005

                              _____/s/_____
                              Stanley R. Chesler, U.S.D.J.